**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NEERAJ KUMAR,                          )   NO. EDCV 26-3785-AS
                                       )
               Petitioner,             )
                                       )
          v.                           )   **MEMORANDUM DECISION AND ORDER**
                                       )
FERETI SEMAIA, et al.,                 )
                                       )
               Respondents.            )
                                       )

**I.**

**INTRODUCTION**

On July 8, 2026, Neeraj Kumar ("Petitioner"), an immigration detainee proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") with the Declaration of Laxman Adhikari ("Adhikari Decl.") against: Fereti Semaia, the Warden of the United States Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California; David Venturella, Acting ICE Director; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); and Acting United States Attorney General Todd Blanche (collectively "Respondents").  (Docket

("Dkt.") No. 1).  The Petition alleges Petitioner has been denied due process of law, Respondents have violated the Immigration and Nationality Act ("INA"), and Petitioner's seizure violates 8 U.S.C. § 1357 and 8 C.F.R. §§ 287.3 and 287.8.  (Petition, ¶¶ 98-116). Petitioner seeks, among other remedies, his immediate release from custody.  (Petition at 23).

On July 15, 2026, Respondents filed an Answer to the Petition stating they "are not presenting an opposition argument to a bond hearing at this time, although they oppose release." (Dkt. No. 8).  On July 17, 2026, Petitioner filed a Reply.  (Dkt. No. 9).

For the reasons discussed below, the Petition is GRANTED and Petitioner is ordered immediately released from custody subject to the conditions, if any, of his most recent order of supervision.

**II.**

**BACKGROUND**

Petitioner is a native and citizen of India who entered the United States without inspection on February 7, 2024.  (Petition, ¶¶ 2, 13, 53-54).  Customs and Border Protection ("CBP") arrested Petitioner inside the United States, and on February 8, 2024, Petitioner was released on his own recognizance pursuant to 8 U.S.C. § 1226(a)(2)(B). (Petition, ¶¶ 2, 55-56, 60).

On February 8, 2024, CBP served Petitioner with a Notice to Appear, which charged him with removability under INA § 212(a)(6)(A)(i), 8

U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled. (Petition, ¶ 60; Adhikari Decl., ¶ 3, Exh. 2).

On or around April 25, 2024, Petitioner filed an application for asylum. (Petition, ¶ 61; Adhikari Decl., ¶ 3, Exh. 3). Thereafter, Petitioner received an Employment Authorization card and began working full time. (Petition, ¶ 62; Adhikari Decl., ¶ 3, Exh. 4).

On September 4, 2025, Petitioner was arrested for an alleged hit-and-run; however, the criminal charges were dismissed, and Petitioner has no criminal convictions or other criminal history. (Petition, ¶¶ 63, 76).

On June 24, 2026, despite no material change in circumstances and even though Petitioner had appeared at all scheduled immigration appoints following his entry into the United States, Respondents arrested Petitioner, who was not provided with notice or a pre-deprivation hearing. (Petition, ¶¶ 2, 64-65, 75). Petitioner remains detained in DHS custody. (Petition, ¶¶ 13, 68). Petitioner asserts his arrest and detention are causing him and his family ongoing harm. (Petition, ¶ 8).

**III.**

**DISCUSSION**

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or

property, without due process of law." Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017); Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; Hernandez, 872 F.3d at 990; see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting Reno v. Flores, 507 U.S. 292, 306 (1993))). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690; Hernandez, 872 F.3d at 990. "'Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.'" Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."), appeal dismissed by, 2021 WL 1590193 (9th Cir. 2021).

Petitioner contends, among other things, that he has been denied due process of law because he was unlawfully detained without notice or a pre-deprivation hearing. (Petition, ¶¶ 103-07). Respondents do not meaningfully dispute this contention, arguing only "they oppose release" but not a bond hearing. (Dkt. No. 8). The Court construes Respondents' failure to substantively address Petitioner's argument as

a concession that the argument has merit.  See Khoury v. Noem, __ F. Supp. 3d __, 2026 WL 846040, *3 (C.D. Cal. 2026) ("The Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim."); Singh v. Chiang, 2025 WL 4058328, *4 (C.D. Cal. 2025) ("The court construes the government's failure to address this argument as a concession to petitioner's argument."); Soleimani v. Larose, 2025 WL 3268412, *3 (S.D. Cal. 2025) ("By failing to respond to the claims . . . asserted, Respondents have conceded the claims.").  And even if that was not the case, Petitioner is entitled to release from custody because his re-detention without notice and a hearing violated due process.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Courts examine procedural due process claims in "two steps." Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989); Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013).  First, courts consider whether the petitioner was deprived of a constitutionally protected liberty interest, and second "whether that deprivation was accompanied by sufficient procedural protections." Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir. 2022); Thompson, 490 U.S. at 460.

"Petitioner has a substantial private interest in remaining out of immigration custody.  As a noncitizen residing within the United States, Petitioner is entitled to constitutional due process." Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 878 (C.D. Cal. 2026);

Martinez v. Noem, 821 F. Supp. 3d 1183, 1190 (C.D. Cal. 2026). Moreover, it is undisputed that Petitioner was paroled into the United States in February 2024, and remained free for over two years before ICE arrested him.    (Petition, ¶¶ 2, 55-56, 60, 64-65, 75). "Petitioner's release . . . gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'"  Martinez, 821 F. Supp. 3d at 1190 (quoting Hamdi, 542 U.S. at 529); Medrano-Rocha, 817 F. Supp. 3d at 878; see also Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); M.R. v. Chestnut, 827 F. Supp. 3d 1348, 1355 (E.D. Cal. 2026) ("Petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest."); Chavarriaga Rojas v. Albarran, 826 F. Supp. 3d 1155, 1165 (N.D. Cal. 2025) ("Courts in this district consistently hold that when a noncitizen is released pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody."); Pinchi, 792 F. Supp. 3d at 1032 ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").

Petitioner's release into the United States also created "an implicit promise" liberty would be revoked only for failing to comply with the conditions of release. Morrissey v. Brewer, 408 U.S. 471, 482 (1972); Martinez, 821 F. Supp. 3d at 1191; Medrano-Rocha, 817 F. Supp. 3d at 878; Chavarriaga Rojas, 826 F. Supp. 3d at 1165.    Thus,

"Petitioner establishes a significant liberty interest in remaining out of immigration custody." Martinez, 821 F. Supp. 3d at 1191; Medrano-Rocha, 817 F. Supp. 3d at 878; Pinchi, 792 F. Supp. 3d at 1032-33.

Having determined Petitioner has a protected liberty interest in remaining out of custody, the Court applies the three-part test established in Mathews to determine whether the government's procedures were constitutionally sufficient.  Under Mathews, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022); Hernandez, 872 F.3d at 993.

As to the first factor, as explained, Petitioner has a significant interest in remaining out of custody given his release and the extensive time he has spent out of custody.  Morrissey, 408 U.S. at 482; Martinez, 821 F. Supp. 3d at 1190-91; Medrano-Rocha, 817 F. Supp. 3d at 878; Pinchi, 792 F. Supp. 3d at 1032-35; see also Hernandez, 872 F.3d at 993 ("As to the first [Mathews] factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core

of the liberty protected by the Due Process Clause.' That is beyond dispute." (citation omitted)); Meneses, 811 F. Supp. 3d at 1163 ("Petitioner has a substantial private interest in remaining in his home, providing for his family, and participating in the community, all out of custody."); Doe v. Becerra, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025) ("It cannot be gainsaid that Petitioner has a substantial private interest in maintaining his out-of-custody status. . . . The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite his protected liberty interest, Petitioner was detained without notice and a pre-detention hearing. (Petition, ¶¶ 2, 64-65, 75). Under these circumstances, there is a high risk of erroneous deprivation of liberty. See Martinez, 821 F. Supp. 3d at 1191 ("[T]he risk of erroneous deprivation is significant without a pre-detention hearing."); Meneses, 811 F. Supp. 3d at 1164 ("There is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing."); Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025) ("The government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing."); Pinchi, 792 F. Supp. 3d at 1035 ("[I]t is clear that there is a significant risk that the government will erroneously deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing. Where, as here, '[the petitioner] has

8

not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor Ms. Garro Pinchi has had an opportunity to determine whether there is any valid basis for her detention."); Torres Ferrera v. Scott, 2026 WL 776145, *5 (W.D. Wash. 2026) ("Where a person with a protected liberty interest is provided no process at all to contest its deprivation, due process cannot be satisfied.  Put differently, no process can never equal due process.  The risk of erroneous deprivation will always be unacceptably high where no process is provided. . . ."); G.S. v. Hermosillo, 2026 WL 179962, *3 (W.D. Wash. 2026) ("the absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation").  Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community.  Zadvydas, 533 U.S. at 690; Martinez, 821 F. Supp. 3d at 1191.  Yet, Petitioner's initial release from ICE custody "reflected a determination by the government that [he] was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless [he] no longer meets those criteria." Pinchi, 792 F. Supp. 3d at 1034; see also Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole while their removal proceedings are pending.  Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), affirmed by, 905 F.3d 1137 (9th Cir. 2018); Venega-Maltez v. Semaia, 2026 WL 846035, *7 (C.D. Cal. 2026) ("Petitioner was released upon his entry into the United States, which reflected a finding that he was not a flight risk or danger to

the community.").   Accordingly, the second <u>Mathews</u> factor favors Petitioner.

Regarding the third factor, "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'"  <u>Rodriguez Diaz</u>, 53 F.4th at 1208 (quoting <u>Demore v. Kim</u>, 538 U.S. 510, 518 (2003)).  "However, the key government interest at stake here 'is not the continued detention of Petitioner, but the government's ability to detain him without [notice and a pre-detention] hearing[,]'"[1] <u>Singh v. Semaia</u>, 2026 WL 1611896, *5 (C.D. Cal. 2026) (quoting <u>Zagal-Alcaraz v. ICE Field Office</u>, 2020 WL 1862254, *7 (D. Or.), <u>report and recommendation adopted by</u>, 2020 WL 1855189 (D. Or. 2020)); <u>see</u> <u>also</u> <u>Lopez Reyes v. Bonnar</u>, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) ("[T]he Court notes that the governmental issue at stake in this motion is the ability to detain Petitioner without providing him with another bond hearing, not whether the government may continue to detain him." (italics omitted)), <u>appeal dismissed by</u>, 2019 WL 4855033 (9th Cir. 2019), and as many courts have recognized, "there is no meaningful countervailing government interest that supports detaining previously [released] noncitizens like [P]etitioner without a pre-detention hearing."  <u>Meneses</u>, 811 F. Supp. 3d at 1164; <u>Martinez</u>, 821 F. Supp. 3d at 1192; <u>see</u> <u>also</u> <u>Pinchi</u>, 792 F. Supp. 3d at 1036 ("[T]here is no countervailing government interest — the third and

---

[1]  "[D]etention for its own sake is not a legitimate governmental interest."  <u>Claros v. Albarran</u>, 811 F. Supp. 3d 1062, 1070 (N.D. Cal. 2025); <u>see</u> <u>also</u> <u>Pinchi</u>, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.").

final *Mathews* factor — that supports conducting a bond hearing only after Ms. Garro Pinchi has been detained, rather than in advance thereof."); Doe, 787 F. Supp. 3d at 1094 ("The final *Mathews* factor is simple as the Government's interest in placing Petitioner in detention without a hearing is low."); Ortega, 415 F. Supp. 3d at 970 ("[T]he government's interest in re-arresting Ortega without a hearing before an IJ is low."); Van Nguyen v. Bondi, 818 F. Supp. 3d 1235, 1242 (W.D. Wash. 2026) ("[T]he government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was already released because the government had been persuaded he would not pose a flight risk or a danger to the community."). Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong, 800 F. Supp. 3d at 1040; see also Martinez, 821 F. Supp. 3d at 1192 ("[C]ustody hearings in immigration court are 'routine' and impose only a 'minimal' cost." (citations omitted)). Thus, the third Mathews factor favors Petitioner.

Therefore, applying the Mathews factors, Petitioner was denied due process of law when he was detained without notice and a pre-detention hearing. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, "the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' We have described 'the root requirement' of the Due Process Clause as being 'that an

individual be given an opportunity for a hearing before he is deprived of any significant [liberty or] property interest.'" (citations and italics omitted)); <u>Ordonez v. Mullin</u>, 2026 WL 1630411, *4 (C.D. Cal. 2026) ("Because each of the *Mathews* factors favors Petitioners' bid for pre-deprivation process, the Court finds that Petitioners' detention — which was accompanied by *no* process — violates the Due Process Clause." (italics in original)); <u>Torres Ferrera</u>, 2026 WL 776145 at *5 ("Because Petitioner had no opportunity to respond to the reasons for her detention, her re-detention violated her due process rights under the Fifth Amendment to the United States Constitution.  Therefore, the Court finds that Petitioner is in custody in violation of the Constitution of the United States.").  And "[b]ecause Petitioner's deprivation of liberty without due process has been unlawful from its inception, [his] immediate release is required."[2] <u>Torres Ferrera</u>, 2026 WL 776145 at *6; <u>see</u> <u>also</u> <u>Martinez</u>, 821 F. Supp. 3d at 1196 ("Petitioner's release from custody is the appropriate remedy" since among other things, "Petitioner continues to suffer irreparable harm so long as she remains unlawfully re-detained"); <u>Ordonez</u>, 2026 WL 1630411 at *4 ("As has been found in countless similar cases in this Circuit, the appropriate remedy . . . is to order Petitioners placed in the position they would have been absent the due process violation — that is, they should be released from custody on the conditions that were initially imposed."); <u>Movsesyan v. Bondi</u>, 2026 WL 712824, *2-5 (C.D. Cal. 2026) (ordering "Petitioner's immediate release, and prevent[ing] Respondents from re-detaining Petitioner without notice and an opportunity to be heard" when Petitioner had "shown that his

---

[2]  Having so concluded, the Court need not address the other claims Petitioner raises.

re-detention without any notice or an opportunity to be heard violates procedural due process"); Ovikian v. Noem, 2026 WL 391431, *4 (C.D. Cal. 2026) ("Providing Petitioner an interview *ex post* facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. . . .    The only appropriate remedy is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his [Order of Supervision]." (italics in original)); Juan v. Noem, 2026 WL 607714, *3 (W.D. Wash. 2026) ("The appropriate remedy for the violation of Petitioner's constitutional rights is release.").

## IV.

## ORDER

Accordingly, it is hereby ORDERED that the Petition (Dkt. No. 1) is **GRANTED**.    Respondents shall immediately release Petitioner (A-245800626) from immigration custody subject to the conditions of Petitioner's most recent order of supervision, if any, and without the imposition of any new or further restraints, such as reporting requirements, GPS, or electronic monitoring.    Respondents are also enjoined from re-detaining Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations.

\\

\\

\\

13

Additionally, the Court ORDERS that Respondents shall file a declaration by no later than 5:00 p.m. on July 30, 2026, confirming Petitioner has been released from custody.   IT IS SO ORDERED.

DATED: July 26, 2026

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

14